IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ERICA NASHVILLE-HYTER, | : | |
| Plaintiff, | : | |
| vs. | : | CIVIL ACTION 14-410-KD-C |
| SHERLENE NASHVILLE WHITE, *et al.*, | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

Plaintiff, who is proceeding *pro se*, filed a self-styled complaint and a motion to proceed without prepayment of fees ("motion") to commence this action.  (Docs. 1, 2). Plaintiff's motion was referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(1), which provides for the automatic referral of non-dispositive pretrial matters to a Magistrate Judge.  In filing this motion, plaintiff requested to be granted *in forma pauperis* status pursuant to 28 U.S.C. § 1915.  This statute requires a complaint be screened under § 1915(e)(2)(B) to determine if the complaint should be dismissed because it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a person immune from such relief.  *Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (affirming the application of 28 U.S.C. § 1915(e)(2)(B) to non-prisoner actions).

In screening the superseding Court-ordered amended complaint (Doc. 4), the Court ordered plaintiff to answer interrogatories, which required the filing of documents from the state court action that formed the basis of the present action, for the purpose of clarifying her claims, as the Court had questions about whether it had subject matter jurisdiction over

plaintiff's action.  (Doc. 6).  Instead of filing her answers to the Court's interrogatories, plaintiff paid the $400 filing fee and filed a "response to magistrate judge order and request that the court impose a restraining order or in the alternate an injunction."  (Doc. 8).  In this filing, plaintiff states that she has the information and documents the Court requested, and does not want to appear as if "she is overstepping the Court in any way," but she has learned that "defendants are seeking to sell the property" and requests injunctive relief "to halt the sale of the property."  (*Id.* at 1-2).

After careful review of this action and the dockets of the pertinent actions in state court, *see Alacourt.com*, and the electronic Baldwin County probate records, it is recommended that this action be dismissed without prejudice for lack of subject matter jurisdiction or, in the alternative, for failure to obey the Court's order.

## I. Amended Complaint.  (Doc. 4)

Plaintiff filed an amended complaint for violations of her federal civil rights and of the civil RICO laws for which she seeks compensatory and punitive damages, injunctive and declaratory relief, appointment of a guardian *ad litem*, any other relief that the Court deems equitable, and attorney fees.[1]  (Doc. 4 at 2, 20-21).  Additionally, plaintiff alleges that she "suffers under a legal disability caused by incompetent and ineffective assistance of counsel since 2001" and suffered a denial of her due process rights, which has caused her to file this action to protect herself and her family from the unlawful and continuing conspiracy by

---

[1]       Plaintiff specifically identified the First, Fourth, Sixth, Eighth, and Fourteenth Amendments, 42 U.S.C. § 1981, *et seq.*, 28 U.S.C. § 1343, 28 U.S.C. §§ 2201-02, 18 U.S.C. § 1961, *et seq.*, and the statutory and common laws of the United States and Alabama as providing the bases for the Court's jurisdiction over her action.  (Doc. 4 at 1, 3).

defendants.[2]  (*Id.* at 3 ¶ 7).  Defendants are alleged to have "affect[ed her] rights to Liberty and Property" from 2003 to the present by conspiring to harm her.  (*Id.* at 4 ¶ 5).[3]

The factual predicate for plaintiff's claims is her marriage to Peter J. Nashville, his subsequent death without leaving a will, and state-court proceedings involving his property and the administration of his estate.  The defendants to plaintiff's claims are: Sherlene Nashville White (sometimes "administrator"), the "alleged" daughter of Peter Nashville ("decedent"); James Saunders, the "alleged" adopted son of decedent; Joyce Nashville-Moore, sister of decedent; Jacob Nashville, brother of decedent; Anita Nashville, wife of Jacob Nashville; Western Surety Company of Sioux Falls, South Dakota; Neill Bonding and Insurance Services, agent of Western Surety Company, in Fairhope, Alabama; John Pittman, her retained attorney; and D. Robert Stankoski, Jr., attorney for defendants Sherlene N. White and Anita and Jacob Nashville.[4]  (*Id.* at 2-3, 10).

According to plaintiff, she and Peter Nashville married on June 9, 2000 in Mobile, Alabama, and she "and her husband *owned* and lived in a trailer on *their* property . . . at 7550 Moore Lane[.]"  (*Id.* at 5 ¶ 8) (emphasis added).  Then, in an immediately following statement,

---

[2]     Plaintiff lists numerous conspiracy statutes that she claims were violated by defendants' actions, namely, 18 U.SC. §§ 35, 241, 242, 371, 401, 1001 *et seq.*, 1341, 1343, and 1621.  (*Id.* at 4-5 ¶ 6).

[3]     The harms that plaintiff alleges that she suffered from defendants' conspiracies are: smearing her name, crippling her financially, bringing false criminal charges resulting in an arrest warrant, seizing her property illegally, obstructing justice, and malicious of abuse of process.  (*Id.* at 4 ¶ 5).

[4]     Plaintiff is not consistent in her spelling of defendants' names and in referring to a person by the same name.   For example, Sherlene White appears to be the same person as Sherlean White.  Defendant James Saunders is referred to as James Albert Sanders and then by different names, e.g., Albert Miles, Jr., James Albert Nashville Miles, Jr. (*id.* at 2, 6, 7,10), and "James Albert Miles, Jr. 'Nashville' Adopted Son a/k/a James Albert Sanders[.]"  (*Id.* at 10).  And, at different points, the decedent is referred to by a different name, Peter J. Miles (*id.* at 10, 14, 25), which appears to be an error.  For the purposes of this Report and Recommendation, the defendants will be referred to as set out above.

plaintiff alleges that "Plaintiff's *husband* was the *owner* of said *trailer* and that portion of the *property* wherein said trailer was situated." (*Id.* at 6 ¶ 9) (emphasis added).

Plaintiff further alleges that later "[s]he and her husband had a home built on property deeded to her husband []on the Nashville estate at 7420 Moore Lane, Daphne[.]" (*Id.* at 6 ¶ 10). On January 26, 2003, plaintiff's husband died intestate. (*Id.* at ¶ 11). Prior to her husband's death, his mother, Amanda Nashville, had died on July 12, 1995 intestate, leaving three heirs, her daughter, Joyce Nashville-Moore, and two sons, Jacob Nashville and Peter Nashville. (*Id.* at ¶ 12). Plaintiff maintains that she, as heir to her husband's estate, is entitled to one hundred percent of his estate as well as an equal share of his late mother's estate. (*Id.* at ¶ 13).

Plaintiff alleges that defendants Joyce Nashville-Moore, Anita and Jacob Nashville, Sherlene Nashville White, and James Saunders "entered into a Rico Conspiracy and acted in concert to defraud and deprive Plaintiff [of] the right to inherit from the aforesaid estates as surviving spouse[.]" (*Id.* at 6 ¶ 14). She alleges that "defendant Jacob Nashville and his sister defendant Joyce Nashville-Moore began conspiring to take the rent the Plaintiff was receiving from said trailer that her and her husband owned . . . 7550 Moore Lane, Daphne, Alabama."[5] (*Id.*).

---

[5]     Throughout the amended complaint, plaintiff makes allegations of a conspiracy, a RICO conspiracy, and acting in concert with one of the goals being to defraud her. The amended complaint is replete with conclusory conspiratorial allegations, which are made after each action or event takes place. These allegations are vague and absent of specific facts showing that a meeting of minds occurred between or among defendants. Rather, the allegations consist of conduct that is parallel to litigation involving the estate of an intestate decedent. Due to the abundance of these types of conspiratorial allegations, not all of the conspiracy allegations will be mentioned. *Cf. Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) ("merely string[ing] together the discrete steps of a commitment process, without showing contacts between [the parties] that could prove [the parties] had 'reached an understanding' to violate her rights . . . do[es] not plead a conspiracy"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 1965-66, 167 L.Ed.2d 929 (2007) ("In identifying facts . . . suggestive enough to render a . . . conspiracy plausible, we have the benefit of the prior rulings and  . . . leading commentators, . . . , that lawful parallel conduct fails to bespeak unlawful agreement. . . . [A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of

Plaintiff alleges that on December 13, 2004, defendant Sherlene N. White filed a complaint in the Circuit Court of Baldwin County, Alabama, seeking "Partition; Conversion; and Rental arrearage" in furtherance of the RICO conspiracy, *Sherlene White v. Erica Nashville,* Case No. CV-2004-1429. (*Id.* at 9 ¶ 22).   Defendants Jacob and Anita Nashville filed motions to dismiss asserting that neither defendant Sherlene N. White nor plaintiff Erica Nashville is the owner of the property and that these matters must be filed in the Probate Court. (*Id.* at ¶ 23). Plaintiff alleges that defendants Jacob and Anita Nashville did this to further the RICO conspiracy and to defraud plaintiff of her right to inherit from her husband and mother-in-law and that defendants Sherlene N. White, Joyce Nashville-Moore, and Jacob Nashville conspired with others and did take "Plaintiff's trailer and the property where it was situated and began a campaign to ruin [her] financially as well as emotionally in furtherance of the Rico conspiracy[.]" (*Id.* at ¶ 24).

In 2004, plaintiff retained defendant John Pittman to defend her and to determine through discovery if defendants Sherlene N. White and James Albert Sanders "were legally the children of the decedent[, plaintiff's] husband[.]" (*Id.* at 10 ¶ 25). Instead, defendant Pittman "conspired with the defendants to force the Plaintiff to sign away her suc[c]ession rights to portions of the Nashville estate under color of law in furtherance of a Rico conspiracy." (*Id.*). Plaintiff claims that defendant Stankoski represented defendants Sherlene N. White and Jacob and Anita Nashville and "knew or should have known that defendant White and the said 'Adopted son' were *not the legal children* of Peter J. Miles[sic], the Plaintiff's husband." (*Id.* at ¶ 26). In fact, defendant Stankoski referred to "James Saunders" from the

---

agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a . . . claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.").

beginning in his pleadings as "James Albert Miles, Jr. 'Nashville' Adopted Son a/k/a James Albert Sanders[.]" (*Id.*).

On August 24, 2006, defendant Sherlene N. White filed a petition for letters of administration in the Probate Court of Baldwin County, Alabama, requesting to be the administrator in Case No. 24,291 as she was the daughter of the deceased. (*Id.* at 7 ¶ 15). Defendants Jacob and Anita Nashville were "'cross claim defendants' [who] acted in concert with defendant White to defraud Plaintiff . . . [in this case] all in furtherance of the ongoing Rico conspiracy." (*Id.* at ¶ 16). Defendant James Saunders alleged that he is the adopted son of Peter Nashville thereby furthering the conspiracy to defraud plaintiff. (*Id.* at ¶ 17).

On September 25, 2006, the probate court granted defendant Sherlene N. White letters of administration. (*Id.* at ¶ 18). Prior to being granted the letters of administration, on September 8, 2006, defendant Western Surety Company issued a bond for defendant Sherlene N. White with respect to her position as administrator through its agent, defendant Neill Bonding and Insurance Services. (*Id.* at 7-8 ¶ 19). These bond defendants are alleged to have "enga[]ge in a racketeering enterprise to per[pet]rate fraud under color of law" when this bond was issued. (*Id.* at 8 ¶ 19). Both defendants Sherlene N. White and James Saunders are alleged to have "falsely represented themselves as the lawful children of the decedent in furtherance of the Rico conspiracy to defraud Plaintiff . . . her husband's . . . estate . . . [and his mother's] estate[.]" (*Id.* at ¶ 20).

In 2006, defendant Sherlene N. White filed an "inventory of estate" in probate court in the sum of $76,799.48. (*Id.* at 11 ¶ 27). Defendants Pittman and Stankoski "attempted to force the Plaintiff into a settlement of the estate whereby if Plaintiff agreed to sign over said trailer and property among other things, defendant White would agree to waive or drop said $76,799.48 inventory allegedly owed to said estate if Plaintiff would sign and agree to said settlement[.]" (*Id.*). Plaintiff refused. (*Id.*). Defendants "became furious when the Plaintiff

6

refused to sign away her suc[c]ession rights and thereby moved to have her arrested for co[ntempt] of court and defendant Pittman withdrew from the case all in furtherance of a Rico conspiracy."  (*Id.* at 12 ¶ 24).  Then, plaintiff filed a *pro se* motion to reduce the inventory amount owed, which was granted.   (*Id.* at 12 ¶ 27).

In response to plaintiff's refusal, defendants are alleged to have begun a campaign of terror against the plaintiff by filing a motion for sanctions requesting the court to order plaintiff to provide to defendant Sherlene N. White keys to the trailer, documents related to the 2002 Ford Mustang and 1995 Mecury Sable, and $5,200 in rental income from the trailer. (*Id.* at ¶ 28).  The court held plaintiff in contempt and issued an arrest warrant for her.  (*Id.*). Pursuant to Alabama Code § 43-8-41,[6] plaintiff maintains that she is entitled to inherit her husband's entire intestate estate, but "the defendants . . . conspire[d] and acted in concert to falsely represent Sherlean White and James Saunders as Plaintiff's husband's legitimate children[.]"  (*Id.* at ¶ 29).  "[D]efendants conspired to fraudulent[ly] take Plaintiff's intestate

---

[6]     This statute provides:

The intestate share of the surviving spouse is as follows:

*(1) If there is no surviving issue or parent of the decedent, the entire intestate estate;*

(2) If there is no surviving issue but the decedent is survived by a parent or parents, the first $100,000.00 in value, plus one-half of the balance of the intestate estate;

(3) If there are surviving issue all of whom are issue of the surviving spouse also, the first $50,000.00 in value, plus one-half of the balance of the intestate estate;

*(4) If there are surviving issue one or more of whom are not issue of the surviving spouse, one-half of the intestate estate;*

(5) If the estate is located in two or more states, the share shall not exceed in the aggregate the allowable amounts under this chapter.

ALA. CODE § 43-8-41 (1982) (emphasis added).

right to decedent's property" inherited, along with his brother, defendant Jacob Nashville, and sister, defendant Joyce Nashville-Moore, from their mother pursuant to Alabama Code § 43-8-42(1).[7] (*Id.* at 13 ¶ 30).

On January 29, 2007, defendant Sherlene N. White, through defendant Stankoski, petitioned the probate court to remove the case to the Circuit Court of Baldwin County, which was granted on February 1, 2007, Case No. CV-2007-000112.00. (*Id.* at 21).

On March 30, 2009, the Baldwin County Court ordered plaintiff to return $5,200 which represented rental income from plaintiff's and her husband's trailer. (*Id.* at ¶ 36). Because plaintiff did not have the funds, defendant Sherlene N. White filed a motion for sanctions,

---

[7]     This statute provides:

The part of the intestate estate not passing to the surviving spouse under section 43-8-41, or the entire intestate estate if there is no surviving spouse, passes as follows:

> (1) To the issue of the decedent; if they are all of the same degree of kinship to the decedent they take equally, but if of unequal degree, then those of more remote degree take by representation;

> (2) If there is no surviving issue, to his parent or parents equally;

> (3) If there is no surviving issue or parent, to the issue of the parents or either of them by representation;

> (4) If there is no surviving issue, parent or issue of a parent, but the decedent is survived by one or more grandparents or issue of grandparents, half of the estate passes to the paternal grandparents if both survive, or to the surviving paternal grandparent, or to the issue of the paternal grandparents if both are deceased, the issue taking equally if they are all of the same degree of kinship to the decedent, but if of unequal degree those of more remote degree take by representation; and the other half passes to the maternal relatives in the same manner; but if there be no surviving grandparent or issue of grandparent on either the paternal or the maternal side, the entire estate passes to the relatives on the other side in the same manner as the other half.

ALA. CODE § 43-8-42 (1982).

8

which was granted.  (*Id.*).  Subsequently, on July 22, 2009, the court reduced the amount owed.  (*Id.*).

On September 30, 2010, defendant Stankoski filed for defendant Sherlene N. White "administrator's motion for reimbursement of attorneys fees," wherein he requested reimbursement of $1,749.92 for attorney fees.  (*Id.* at 15 ¶ 37).  In the motion, he allegedly falsely represented that "[t]he sole asse[]t of the above–styled Estate consist of a one-third (1/3) undivided interest in a parcel of real estate along with a trailer which has become a permanent fixture.  With the exception of the afore-mentioned real property, the Estate is in essence insolvent."  (*Id.* at 16 ¶ 37).

Plaintiff alleges that defendants have "fraudulently" partitioned off her mother-in-law's estate and that this estate was never mentioned in court documents.  (*Id.* at 13 ¶ 31).  Plaintiff contends that while defendants were concealing this property from the court, they were trying to force plaintiff to sign a mutual release and settlement and a quitclaim deed, which would deprive plaintiff from inheriting from her husband's estate and her mother-in-law's estate.  (*Id.*).  Moreover, defendants have "illegally" taken rent collected from her trailer at 7550 Moore Lane and have denied her all access to the Nashville Estate by fencing the property and threatening her life if she trespassed.  (*Id.* at 14 ¶ 32-33).

Plaintiff informs the Court that the decedent brought defendant Sherlene N. White as a child from Pittsburg, Pennsylvania to Alabama without having married her mother or having any intentions of marrying her mother and that the Nashville family took her in upon her arrival.  (*Id.* at ¶ 34).  Thus, plaintiff argues that defendant Sherlene N. White is her mother's child, according to Alabama Code § 43-8-48,[8] and lacked standing to become administrator Peter J. Nashville's estate.  (*Id.*)

---

[8]       Section 43-8-48 provides:

With respect to defendant James Saunders, plaintiff maintains that defendant Sanders is not the son of decedent.  (*Id.*).  That is, he was his mother's son from a prior relationship before she married the decedent, and he was not adopted by decedent.  (*Id.*).  Thus, defendant Sanders does not come in the line of intestate succession.  (*Id.*).  Furthermore, plaintiff does not know defendant Saunders' true name or address as defendant Stankoski referred to him by various names, but defendant Saunders represented himself as "James Saunders" in a notarized pleading.  (*Id.* at 15 ¶ 35).

## II.  Analysis.

### A.  *Pro Se* Litigation.

When considering a *pro se* litigant's allegations, the Court gives them a liberal construction holding them to a more lenient standard than those of an attorney.  *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595-596, 30 L.Ed.2d 652 (1972).  The Court, however,

---

If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person:

(1) An adopted person is the child of an adopting parent and not of the natural parents except that adoption of a child by the spouse of a natural parent has no effect on the right of the child to inherit from or through either natural parent;

(2) In cases not covered by subdivision (1) of this section, a person born out of wedlock is a child of the mother. That person is also a child of the father, if:

a. The natural parents participated in a marriage ceremony before or after the birth of the child, even though the attempted marriage is void; or

b. The paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof, but the paternity established under this paragraph is ineffective to qualify the father or his kindred to inherit from or through the child unless the father has openly treated the child as his, and has not refused to support the child.

ALA. CODE § 43-8-48 (1982).

does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Investments v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010) (relying on *Iqbal v. Ashcroft*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).  Furthermore, the Court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements.  *Iqbal*, 566 U.S. at 681, 129 S.Ct. at 1951.  In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure."  *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863 (1989).

### B.  Authority to Dismiss for Lack of Subject Matter Jurisdiction.

The Court's first consideration is to inquire into its jurisdiction, *United States v. Denedo*, 556 U.S. 904, 909, 129 S.Ct. 2213, 2219, 173 L.Ed.2d 1235 (2009), as the Court's jurisdiction is limited by the Constitution or Congress to hear only certain actions.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994).  "[A] federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, . . . and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises."  *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).  This inquiry should be done at the earliest stage in the proceedings and *sua sponte* whenever subject matter jurisdiction may be lacking.  *University of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).  "[O]nce a court determines that there has been no [jurisdictional] grant that covers a particular case, the court's sole remaining act is to dismiss the case for lack of jurisdiction."  *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000).

A federal district court, like this Court, lacks subject matter jurisdiction to rule on a final state-court judgment.  *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482,

103 S.Ct. 1303, 1315, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923).  Federal review of state-court judgments may be had only in the United States Supreme Court.  *Feldman,* 460 U.S. at 482, 103 S.Ct. at 1315.  "[U]nder what has come to be known as the *Rooker–Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments."  *Lance v. Dennis,* 546 U.S. 459, 465, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006).  "The federal courts below the Supreme Court must not become a court of appeals for state court decisions."  *Vasquez v. YII Shipping Co.,* 692 F.3d 1192, 1195 (11th Cir. 2012).  "The state court appellant has to find a state court remedy, or obtain relief from the U.S. Supreme Court."  *Id.* at 1196.

The *Rooker-Feldman* doctrine "is narrow and is 'confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'"  *Lozman v. City of Riviera Beach, Fla.,* 713 F.3d 1066, 1072 (11th Cir. 2013) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)).  This Circuit applies the test from *Exxon Mobil* to those complaints brought by state-court losers complaining of injuries from final state-court judgments and seeking a district court's review and rejection of such judgments. *Nicholson v. Shafe,* 558 F.3d 1266, 1274 (11th Cir. 2009).

**C.  State Court Records.**

In the present action, plaintiff refers to three connected state court cases, namely, *White v. Erica Nashville,* CV-2004-001429 (Doc. 4 at 9), and *The Estate of Peter J. Nashville, Jr.,* Probate Court Case No. 24,291 (*id.* at 7), *removed to Baldwin County Circuit Court*, *The Estate of Peter J. Nashville, Jr.,* CV-2007-000112.00.  (*Id.* at 8).  Due to plaintiff not furnishing the requested documents to the Court, which she purportedly has in her possession (*see* Doc. 8 at 1), the Court, with considerable effort and expense, examined some of these documents through

*AlaCourt.com* and the Baldwin County's electronic probate records and discovered the following information.[9]

The case of *Sherlene N. White v. Jacob Nashville, et al.,* CV-2004-001429.00, which included Erica Nashville as a defendant, was filed on December 13, 2004 and was dismissed without prejudice on August 8, 2006. The case action summary sheet reflects that after the case's dismissal no appeal was taken. The date of the last entry on the case action summary is February 8, 2008. Plaintiff described this action as being a suit "seeking Partition; Conversion; and Rental arrearage[.]" (Doc. 4 at 9). Defendants Jacob and Anita Nashville moved to dismiss the action "alleging that neither 'Plaintiff (White) nor Erica Nashville are owners of the property,'" and "that these matters must be filed in Probate Court[.]" (*Id.*).

Shortly after dismissal of the preceding action on August 8, 2006, the Baldwin County Probate Court records reflect that on August 24, 2006 a probate case was opened for Peter J. Nashville, Jr., deceased, Probate Court Case No. 24,291. Erica Nashville is listed on the docket as a person to be notified of the probate case; her attorney, defendant James Pittman, is also listed on the docket sheet. After the petition for removal filed by the administrator, defendant Sherlene N. White, was granted, the probate court case was transferred to the Baldwin County Circuit Court on February 1, 2007. The date of the last entry on the probate court's docket is October 12, 2011, when the original records were returned from the circuit court.

The probate court case was opened in the Baldwin County Circuit Court as *The Estate of Peter J. Nashville, Jr.* CV-2007-000112.00. Its case action summary sheet reflects that plaintiff

---

[9]     The Court takes judicial notice of the state court records that are related to this action. *See Cunningham v. District Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010); *Coney v. Smith*, 738 F.2d 1199, 1200 (11th Cir.1984) (citing *Moore v. Estelle*, 526 F.2d 690, 694 (5th Cir.1976)); FED.R.EVID. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1041 n.18 (11th Cir. 2014) (judicial notice taken of an online judicial system similar to AlaCourt).

Erica Nashville was a defendant.  A motion to enforce settlement was filed on June 19, 2008 because plaintiff Erica Nashville would not execute the mutual release.  (Doc. 38).  On February 13, 2009, the administrator of the estate, defendant Sherlene N. White, filed a complaint, in which the estate's real and personal property is identified, and which alleges that plaintiff Erica Nashville withdrew money from the decedent and Sherlene N. White's joint account.  (Doc. 74).

The complaint's claims for relief are as follows.  In the first claim for relief, the administrator of the estate sought a judgment dividing the estate according to laws of intestacy, thereby entitling defendants White and Saunders to receive half of the estate.  (*Id.* at 4).  The second claim sought a judgment turning over assets of estate held by plaintiff Erica Nashville to the estate or to pay the cash value of any item that had been disposed.  (*Id.*).  The third claim sought the turnover of rents paid to Erica Nashville from property owned by the decedent or a judgment of equivalent value.  (*Id.* at 6).

On March 3, 2009, the circuit court ordered that

> [T]he Administrator be placed in possession of the trailer and real property located at 7550 Moore Lane  . . . and the Surviving Spouse shall immediately provide the Administrator with the keys to said trailer . . . . [T]he Administrator shall immediately be placed in possession of the riding lawn mower . . . at 7550 Moore Lane . . . . [T]he Surviving Spouse  shall . . . provide the Administrator with all documents in her possession relating . . . to the 2002 Ford Mustang and 1995 Mercury Sable.   [T]he Administrator shall obtain a fair market value for both the 2002 Ford Mustang and 1995 Sable as of October 11, 2006 . . . . [T]he Surviving Spouse shall remit to the Estate, the sum of  . . . ($5200.00) which represents rental income which was obtained or could have been obtained through leasing the trailer and real property. . . . [A]fter reviewing the proposed Inventory submitted to the Court by the Administrator, the Court finds that all personal property on the proposed Inventory, with exception of the trailer and real property, two (2) vehicles, riding lawnmower, and rental income, meet the homestead and exempt property allowances exemptions allowed by the Surviving Spouse and as such the Surviving Spouse is not required to return this personal property and reimburse the Estate.

Doc. 75.

On March 13, 2009, plaintiff Erica Nashville's objection to the complaint and her motion to divide estate equally or sell and equally divide the proceeds was denied.  (Doc. 78). On March 30, 2009, a motion for sanctions was filed by the administrator against plaintiff Erica Nashville for her to show why she should not be held liable for failure to abide by the court's order requiring that she provide to the administrator the keys to the trailer, documents relating to the 2002 Ford Mustang and the 1995 Mercury Sable, and $5200.00 in rental income from the trailer.  (Doc. 83).  Notwithstanding plaintiff's objection stating, *inter alia*, she used the $5200.00 defending this action (Doc. 87), the court granted the motion for sanctions.  (Doc. 88).  The court entered a show cause order for plaintiff to appear on April 28, 2009 "to show cause why she should not be held in contempt or further sanctioned for her failure to abide by an Order of this Honorable Court."  (Doc. 91).  When plaintiff failed to appear, on April 28, 2009, a writ of arrest was issued ordering the Sheriff of Madison County to arrest, incarcerate, and transport her to the Baldwin County Corrections Center and allowing plaintiff to purge herself of contempt and be released from incarceration by posting a cash bond in the amount of $5200.00.  (Doc. 95).  On May 21, 2009, the writ of arrest was recalled as plaintiff was not served, and the motion to show cause was re-set to June 16, 2009.  (Doc. 102).  Despite having received notice of the hearing, plaintiff, who was proceeding *pro se* at that time, failed to appear.  (Doc. 105).  Thereupon, the administrator's motion for sanctions was granted on June 23, 2009, and a default judgment was entered as it was found to be the "only adequate sanction left to the Court for the Surviving Spouse's continued refusal to comply with t[he] Court's orders and failure to timely appear when notified[.]"  (*Id.*).  The order made the judgment final as to this issue.  (*Id.*).

The administrator filed a motion to reduce the award for sanctions to a judgment, which was granted for the estate of decedent in the amount of $5200.00 against plaintiff Erica Nashville-Hyter on July 22, 2009, with execution authorized to issue immediately.  (Docs. 109, 112).  On September 14, 2009, the Baldwin County Circuit Court received plaintiff's notice of appeal dated September 8, 2009 as to the final judgment against her entered on July 22, 2009.  (Doc. 115).  Plaintiff's appeal was dismissed on the appellee's motion on December 8, 2009, and the Alabama Court of Civil Appeals entered a certificate of judgment on February 1, 2010.  (Doc. 117).   After the certificate of judgment was entered, other entries were made on the docket, e.g., motions related to reimbursement of attorney fees, with the last entries dated October 7, 2011 concerning the return of the probate files to the probate court and the scanning and checking of the record for accuracy.

### D.  Failure to Establish Subject Matter Jurisdiction.

In order for the *Rooker–Feldman* doctrine to apply under *Exxon–Mobil*'s parameters, the Court must determine if the present action was filed after state-court proceedings concluded.  *Cormier v. Horkan,* 397 F. App'x 550, 552 (11th Cir.) (unpublished) (citing *Exxon-Mobil,* 544 U.S. at 284, 125 S.Ct. at 1521-22),[10] *cert. denied,* 131 S.Ct. 2099 (2011).  In the present action, plaintiff filed her complaint on September 3, 2014, which was well after state-court proceedings had concluded.  (Doc. 1).  That is, *Sherlene N. White v. Jacob Nashville, et al.,* CV-2004-001429.00 was dismissed without prejudice on August 8, 2006; *The Estate of Peter J. Nashville, Jr., deceased,* Probate Court Case No. 24,291, filed on August 24, 2006, concluded well before the last clerical docket entry on October 12, 2011; and *The Estate of Peter J. Nashville, Jr.,* CV-2007-000112.00 concluded when a certificate of judgment was entered on February 1, 2010.  Thus, the Court finds that these state court cases have ended.  *Nicholson,* 558 F.3d at 1275 (citing

---

[10]         "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11TH CIR. R. 36-2 (2005).

*Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico,* 410 F.3d 17, 24 (1st Cir. 2005) (finding that state proceedings have "ended" when neither party seeks further action, such as when the losing party allows the time to expire for filing an appeal)); *Cormier,* 397 F. App'x at 552 (finding that three years prior to filing the federal complaint, the state-court action had ended when the state supreme court affirmed the lower court's final decree in the divorce action); *see* ALA.R.APP.P. 4(a)(1) (notice of appeal shall be filed within forty-two days of the date of the judgment or order from which an appeal is being taken).  At least three years have passed with no action being taken by any party, and considering that the forty-two day appeal period has long since expired, the undersigned finds that the state-court proceedings in this matter concluded before the present action was filed on September 3, 2014.

The other determination that the Court must make for the *Rooker-Feldman* doctrine to apply within the parameters of *Exxon-Mobil* is whether the "plaintiff is a state-court loser who is complaining of injuries caused by state-court judgments. . . and inviting district court review and rejection of those judgments." *Id.* (citing *Exxon-Mobil,* 544 U.S. at 284, 125 S.Ct. at 1521-22).  This determination includes a plaintiff's claims that are "inextricably intertwined" with the state court judgment but which may not have been brought.  *Id.* at 553; *Casale v. Tillman,* 558 F.3d 1258, 1260 (11th Cir. 2009) (quoting *Feldman,* 460 U.S. at 482 n.16, 103 S.Ct. at 1315 n.16).  "A claim is inextricably intertwined if it would effectively nullify the state court judgment or it succeeds only to the extent that the state court wrongly decided the issues."  *Id.* Here, plaintiff complains about being deprived of inheriting her husband's entire estate through defendants promoting defendants White and Saunders as his legitimate children pursuant to a RICO conspiracy or other conspiracy.  (Doc. 4 at 12 ¶ 29).  She complains that she was further deprived of an equal share of her husband's mother's estate pursuant to these conspiracies.  (*Id.* at 13 ¶ 30).  Additionally, she claims that she was deprived of the rent

collected from her trailer pursuant to the conspiracies. (*Id.* at 13 ¶ 32). The state court in the proceedings administering the estate of Peter J. Nashville, Jr., addressed these matters or could have addressed these matters as they are intertwined in the distribution of the estate's assets. If this Court was to rule favorably for plaintiff on these matters, the Court would have to determine the state court wrongly decided these issues, which would nullify the state court's decision with respect to the decedent's estate. Accordingly, plaintiff is a state-court loser who is complaining about injuries caused by state-court judgments and is inviting this Court's review and rejection of state-court judgments.

In addition, plaintiff claims that her mother-in-law's "property *was never mentioned in any of the aforesaid court action against [her]* simply because the defendants were concealing '[the mother-in-law's]' property from the court and Plaintiff while at the same time trying to force Plaintiff to sign . . . 'Mutual Release And Settlement' and 'Quitclaim Deed' where upon signing Plaintiff would thereby lose all her rights to inherit anything from her husband's intestate estate as well as what [she] is entitled [to] through her mother-in-law['s] intestate estate all in furtherance of the ongoing Rico conspiracy." (*Id.* at 13 ¶ 31) (emphasis in original). Contrary to plaintiff's contention that her mother-in-law's property was "never mentioned" or was "concealed," the complaint filed by the administrator on February 13, 2009 in the Baldwin County Circuit Court in CV-2007-000112.00 states: "At the time of his death, the decedent owned an interest in two (2) parcels of real property. The first parcel (deed recorded in the office of the Judge of Probate as Instrument Number 617604) was held by PETER J. NASHVILLE, JR. and ERICA NASHVILLE jointly with right of survivorship. The decedent owned a one-third undivided interest in the second parcel, Jacob Nashville and Anita Nashville each own a one-third undivided interest in the second parcel." (Doc. 74 ¶ 6). It is clear to this Court that the tract of land that was divided into thirds is the same tract in

which plaintiff wants the one-third interest that her husband inherited from his mother. Thus, no concealment from the state court occurred.

Considering that state-court proceedings had concluded prior to the present action being filed and that plaintiff is complaining about injuries caused by state-court judgments and inviting this Court to review and reject those judgments, the test for applying the *Rooker-Feldman* doctrine, as articulated in *Exxon-Mobil,* has been satisfied. Thus, this Court lacks subject matter jurisdiction over this action. *See Figueroa v. MERSCORP, Inc.,* 477 F. App'x 558, 560-61 (11th Cir. 2012) (affirming the dismissal under the *Rooker-Feldman* for lack of subject matter jurisdiction over the federal RICO complaint that was brought by a state-court loser inviting the review and rejection of the state court's decision "because his federal RICO claims could only succeed if the state court's foreclosure judgment was in error"); *Cormier,* 397 F. App'x at 553 (finding the complaint against the judge and others was barred by *Rooker-Feldman* as plaintiff's success on his federal claims would nullify the state court judgment regarding alimony, and advising the plaintiff that he should have filed a direct appeal); *Mickens v. 10th Judicial Circuit Court,* 458 F. App'x 839, 841 (11th Cir.) (holding that *Rooker-Feldman* barred the federal complaint which was filed by state-court losers after the state-court proceedings ended and which was based on state-court judgments and alleged injuries intertwined with the state-court judgments, i.e., the loss of their property, monetary damages, and emotional suffering that were the result of fraudulent proceedings), *cert. denied,* 133 S.Ct. 432 (2012).

Based upon the foregoing reasons, it is recommended that this action be dismissed without prejudice for lack of subject matter jurisdiction over plaintiff's action. *Stalley v. Orlando Reg'l Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008) (holding that the district court's dismissal should be without prejudice since the court lacked subject matter jurisdiction over the action).

### E.  Imposition of Sanctions.

In addition to the foregoing reason for dismissal, the dismissal of this action is warranted on an alternative ground - plaintiff's failure to file answers to the Court's interrogatories.  In the Court's order propounding interrogatories, the Court warned plaintiff that the failure to comply with its order would result in the dismissal of this action for failure to prosecute and to obey the Court's order.  (Doc. at 3).   Nonetheless, plaintiff did not file her answers or the requested documents even though she stated that she possesses the documents.   (Doc. 8 at 1).   Instead, plaintiff paid the $400 filing fee (Doc. 7), which she collected from family and friends, so her action could proceed on the merits and not be screened under 28 U.S.C. § 1915(e)(2)(B).  (Doc. 8 at 2; Doc. 9 at 2).  Plaintiff's failure to comply with the Court's order caused the Court to expend much time and expense in gaining access to the pertinent documents in state court.  The Court notes that the dockets in state court contain numerous filings, which was due in part to plaintiff's failure to comply with the state court's orders and rules.

Even though plaintiff is proceeding *pro se*, she is still "subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." *Moon,* 863 F.2d at 837.  And plaintiff is required to respond to a court's order as directed.  *Goforth v. Owens,* 766 F.2d 1533, 1535 (11th Cir. 1985).

A district court has "the inherent authority to control the proceedings before [it], which includes the authority to impose 'reasonable and appropriate' sanctions." *Martin v. Automobili Lamborghini Exclusive, Inc.,* 307 F.3d 1332, 1335 (11th Cir. 2002).  The authority of courts to impose sanctions for failure to prosecute or to obey an order is longstanding and is acknowledged, but not limited, by Rule 41(b) of the Federal Rules of Civil Procedure.  *Link v. Wabash R.R. Co.,* 370 U.S. 626, 629-30, 82 S.Ct. 1386, 1388-89, 8 L.Ed.2d 734 (1962); *see Moon,* 863 F.2d at 837 (the federal rules "provide sanctions for misconduct and for failure to comply with

court orders"). This authority gives the courts power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link,* 370 U.S. at 630-31, 82 S.Ct. at 1389. "The sanctions imposed can range from a simple reprimand to an order dismissing the action with or without prejudice." *Mingo v. Sugar Cane Growers Co-op of Fla.*, 864 F.2d 101, 102 (11th Cir. 1989); *see Goforth,* 766 F.2d at 1535 (ruling the inherent powers of the courts include the power to dismiss an action for failure to comply with an order); *see also Gratton  v. Great Am. Commc'ns,* 178 F.3d 1373, 1374 (11th Cir. 1999) (observing that Rule 41(b), Fed.R.Civ.P., expressly "authorizes a district court to dismiss a complaint for … failure to comply with a court order"). And this inherent power authorizes a court to impose the sanction of dismissal of an action *sua sponte.  Link,* 370 U.S. at 630, 82 S.Ct. at 1389.

In considering the appropriate sanction, the court is required to determine that a lesser sanction will not suffice. *Mingo,* 864 F.2d at 102. In its consideration of an appropriate sanction, the Court is constrained because plaintiff is proceeding *pro se*, will not abide by a court order, and represents herself as being impecunious. Furthermore, plaintiff appears to be intent on directing this litigation instead of following the Court's order and the law. In light of these conditions, the sanction of imposing a monetary fine would have no effect on plaintiff due to the apparent lack of funds and the lack of desire to comply with an order. Consequently, the dismissal of this action without prejudice is the more appropriate sanction. *Cf. Moon,* 863 F.2d at 837-39 (affirming the dismissal with prejudice of an *in forma pauperis, pro se* prisoner's action for failure to pay the sanction of costs associated with the deposition that he refused to give despite being previously warned he must be deposed or he would bear the deposition's costs or suffer the dismissal of his action).

Dismissal of an action for failure to prosecute should be undertaken "only in the face of a clear record of delay or contumacious conduct by the plaintiff." *McKelvey v. AT&T Technologies, Inc.,* 789 F.2d 1518, 1520 (11th Cir. 1986). Where there is record of "delay or

willful contempt" by a plaintiff, dismissal for failure to prosecute or to comply with the court's order is an appropriate sanction.  *Goforth,* 766 F.2d at 1535 (11th Cir. 1985).  Plaintiff's failure to comply with the Court's order is willful and defiant conduct.  To date, plaintiff has not answered the Court's interrogatories or produced documents, or notified the Court why she is incapable of doing so.  Her actions, taken subsequent to the Court's order, of paying the filing fee, moving for a preliminary injunction or a temporary restraining order, and moving to recuse the undersigned reflects her intent to direct her action, when considered together with her failure to comply with the order, as compared to a litigant zealously advocating her position.  Therefore, due to plaintiff's willful and contumacious conduct, it is recommended that this action be dismissed without prejudice for failure to prosecute and to obey the Court's order, as no lesser sanction will suffice.[11]  *Green v. U.S. Dept. of Housing and Urban Development,* CA No. 10-0473-WS-M, 2011 WL 98542 (S.D. Ala. Jan. 10, 2011) (unpublished) (dismissing without prejudice the *pro se* plaintiff's federal claims as a sanction for failure to comply with the court's order and to prosecute his action by filing a court-ordered amended complaint after he was warned that his failure to comply would result in the dismissal of his federal claims).

---

[11]     Even though it is recommended that the dismissal be without prejudice, the dismissal may effectively be with prejudice if the statute of limitations has expired.   The Court is not able to determine the exact statute of limitations due to plaintiff's manner of pleading, which is of a conclusory and "shotgun" nature.  *Anderson v. District Bd. of Trustees of Cent. Fla. Cmty. College,* 77 F.3d 364, 366 (11th Cir. 1996)  (a shotgun pleading is one that is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.").  Thus, the statute of limitations may have already run on her claims or the statute of limitations may be close to expiring.

Due to the disposition of this action, the Court did not address the deficiencies in plaintiff's pleading of her claims against each defendant.  That is, her claims are not pled so that there is a plausible basis for relief on its face and so each defendant will have notice of the claim against him or her. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007) (in order to state a claim upon which relief can be granted, the allegations must show plausibility); *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### III.  Conclusion.

Based upon the foregoing reasons, it is recommended that this action be dismissed without prejudice for lack of subject matter jurisdiction or, in the alternative, for failure to obey the Court's order.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that *under Eleventh Circuit Rule 3-1*, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the

Magistrate Judge is not specific.

     **DONE** this the 27th day of May, 2015.

                       s/ WILLIAM E. CASSADY
                       UNITED STATES MAGISTRATE JUDGE